## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **CIVIL NO. 1:14cv395-HSO**
                                          **CRIMINAL NO. 1:11cr79-HSO-JCG**

**BOBBY EARL KEYS**                                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT BOBBY EARL KEYS' MOTION FOR RECONSIDERATION [86] AND MOTION TO REINSTATED (SIC) RIGHTS TO SEEK COLLATERAL RELIEF [87]

BEFORE THE COURT are Defendant Bobby Earl Keys' Motion for Reconsideration [86] and Motion to Reinstated (sic) Rights to Seek Collateral Relief [87]. After due consideration of the Motions [86] [87], the record, and relevant legal authority, the Court finds that the Motion for Reconsideration [86] is untimely and should be denied, and that the Motion to Reinstated (sic) Rights to Seek Collateral Relief [87] should be denied as a successive § 2255 Motion. Additionally, Defendant Bobby Earl Keys' successive § 2255 Motion to Reinstated (sic) Rights to Seek Collateral Relief [87] and his original Motion under 28 U.S.C. § 2255 [1] are barred by the terms of his Plea Agreement and should be dismissed.

Even if the Court considers Defendant's arguments on the merits, the Court finds that Defendant's Motions [77] [87] should be denied. The Court further finds that because an evidentiary hearing is neither appropriate nor necessary to resolve Defendant's § 2255 claims, Defendant's request for a hearing should be denied.

# I.   BACKGROUND

A.   Defendant's Guilty Plea

On September 8, 2011, Defendant Bobby Earl Keys ("Defendant") was indicted by a Grand Jury.  Count One of the Indictment [2] alleged that Defendant intentionally devised and intended to devise

> a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and in furtherance thereof, did use and cause to be used the U.S. Mails and private or commercial  interstate carriers for purposes of executing the scheme and attempting to do so,

Indictment [2] at 1-3, by filing fraudulent claims alleged to have been incurred as a result of the Deepwater Horizon Oil Spill with the Gulf Coast Claims Facility ("GCCF"), in violation of Sections 1341 and 2, Title 18, United States Code, *id*.  On October 19, 2011, Defendant, through counsel, filed his Notice of Intent to Change Plea to Guilty [19].

Pursuant to a written Plea Agreement [23] and Plea Supplement [24] with the Government, on November 4, 2011, Defendant pleaded guilty to Count One of the Indictment in exchange for, among other things, the Government moving to dismiss Count Two of the Indictment.  The written Plea Agreement [23] and Plea Supplement [24] (collectively, the "Plea Agreement") detailed both Defendant's obligations and those of the  Government.  *See* Minute Entry, November 4, 2011. Pursuant to the Plea Agreement [23], Defendant expressly waived "the right to appeal the conviction and sentence in this case" and "the right to contest the

conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255 . . . ."  Plea Agreement [23] at 4-5.

At the November 4, 2011, change of plea hearing, Defendant testified under oath in open court that he understood the terms of the Plea Agreement, that he was entering into the Plea Agreement of his own free will, that he understood the terms of the Plea Agreement were "merely recommendations to the Court" that the Court could reject, and that he was waiving his right to contest the conviction or sentence or the manner in which the sentence was imposed in any post-conviction proceeding.  Plea Tr. [40] at 8-19.

Defendant further acknowledged under oath that he knew and understood that if he pleaded guilty as to Count One, in violation of Sections 1341 and 2, Title 18 United States Code, "which makes it a crime for anyone to use the mails in carrying out a scheme to defraud," he could be sentenced to up to twenty (20) years imprisonment followed by up to three (3) years of supervised release, be fined up to two hundred fifty thousand dollars ($250,000.00), and be assessed a one hundred dollar ($100.00) special assessment.  Plea Tr. [40] at 11-19.  Defendant averred that he understood the sentencing judge would decide his sentence after considering the advisory U. S. Sentencing Guidelines Manual ("U.S.S.G."), possible authorized departures from the Guidelines, and relevant statutory sentencing factors.  Plea Tr. [40] at 15-16.

The Court informed Defendant of the charge to which he was pleading guilty, as follows:

> I'm required to inform you of the charge to which you're seeking to plead guilty in this case. Count One of the indictment charges as follows: That from on or about August 23, 2010, through on or about January 6, 2011, in Jackson County in the Southern Division of the Southern District of Mississippi and elsewhere, the defendant, Bobby Earl Keys, aided and abetted by others known and unknown to the grand jury, intentionally devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, in furtherance thereof, did use and cause to be used the U.S. mails and private or commercial interstate carriers for the purpose of executing the scheme and attempting to do so. To accomplish his fraudulent purposes, the defendant, Bobby Earl Keys, aided and abetted by others known and unknown to the grand jury, submitted to the Gulf Coast Claims Facility, or GCCF, a GCCF claim form and other documents in which the defendant knowingly and willfully made or caused to be made a false and fraudulent material statement or representation, in that the defendant represented that he lost earnings and profits from his job at John Minor's Fresh Seafood as a result of the Deep Water Horizon oil spill, when in truth and in fact, the defendant, Bobby Earl Keys, did not lose earnings and profits from his job at John Minor's Fresh Seafood as a result of the Deep Water Horizon oil spill.
>
> On or about the date set forth below within the Southern District of Mississippi and elsewhere, the defendant, Bobby Earl Keys, aided and abetted by others known and unknown to the grand jury, for the purpose of carrying out this scheme and artifice to defraud and attempting to do so, knowingly caused to be sent or delivered by the United States Postal Service and private and commercial interstate carriers certain items, each item constituting a separate count herein as follows: Count one, Check No. 109032, dated on or about November 4th, 2010, in the amount of $28,500, in violation of Section 1341 and 2, Title 18, United States Code.

Plea Tr. [40] at 21-22. Following an in-depth explanation by the Court of the essential elements of the charge contained in Count One and the Government's

4

proffer of the facts it would be prepared to prove if the case went to trial, Defendant entered a plea of "Guilty" to Count One of the Indictment.[1]  Plea Tr. [90] at 21-30.

On June 5, 2012, the Court sentenced Defendant to a 150 month term of imprisonment as to Count One and ordered restitution to the Deep Water Horizon Oil Spill Trust in the amount of $98,098.66, followed by supervised release for a term of three years. *See* Competency and Sentencing Tr. [41] at 59-65. The Judgment of conviction was entered on June 11, 2012. J. [34].

Defendant filed a Notice of Appeal [35] on June 19, 2012. Prior to Defendant filing an appellant's brief, the Government filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on January 29, 2013. On March 7, 2013, after Defendant filed a Response and the Government filed a Reply, the United States Court of Appeals for the Fifth Circuit dismissed Defendant's appeal. The Mandate issued March 29, 2013. Mandate/Judgment [48]. On October 15, 2013, the United States Supreme Court entered its Order [70] denying Defendant's request for certiorari. *United States v. Keys*, 134 S. Ct. 452 (Oct. 15, 2013) (*cert. denied*) (*reh'g denied*, 134 S.Ct. 733 (Dec. 2, 2013)).

---

[1] Defendant's counsel stated to the Court that "Mr. Keys substantially agrees with what the Government said and admits that he submitted a false application for BP disaster assistance to Ohio. Mr. Keys has some disputes with how he had acquired the information from Mr. John Minor." Counsel then stated that he did not believe that that information was relevant to the elements of the offense. Plea Tr. [40] at 28-29. Defendant then replied "Yes" when the Court asked if he agreed that "he had filed a false application and that he did not have an employment claim." *Id*.

On October 20, 2014, Defendant filed a Motion pursuant to 28 U.S.C. § 2255 asking that the criminal

> Indictment be [d]ismissed and all charges, because this Court lacked Jurisdiction to commenced (sic) prosecution under §1341 and the Government overreached its judicial authority by prosecuting the reprehensible fraudulent acts committed in this case under §1341, conduct left to the State of Mississippi to Governor.

Mot. [77] at 8.  Defendant's Motion incorporated by reference the "grounds for relief" asserted in Defendant's Memorandum of Law [78], Grounds 1–8.  Mot. [77] at 4.  The Memorandum appeared to allege that Defendant should be allowed to withdraw his guilty plea and avoid the waivers contained in the Plea Agreement and Plea Supplement because:

(1)   Defendant's fraudulent acts supporting his guilty plea did not constitute a crime under the federal mail fraud statute (Ground One);

(2)   Defendant's guilty plea was rendered invalid because the prosecutor suppressed exculpatory evidence (Ground Two);

(3)   Defendant's counsel failed to investigate the relevant facts and determine that Defendant's acts did not constitute federal mail fraud before engaging in plea negotiations, evidencing ineffective assistance of counsel (Ground Three);

(4)   Defendant's guilty plea was rendered invalid because the Plea Agreement and Plea Supplement provided that Defendant was to be sentenced within the lower 50% of the applicable guideline range of 30-37 months, but "the sentencing judge inserted himself into the plea negotiation, imposed term of imprisonment totally beyond the movant (sic) reasonable expectation" (Ground Four);

(5)   Defendant's plea was rendered invalid based upon the faulty guideline range calculation that included a loss calculation that "DID NOT TAKE INTO ACCOUNT THAT SCHEME TO DEFRAUD WERE (sic) DETECTED BY 'VICTIMS' ON SEPTEMBER 12, 2010, SEVERAL

6

MONTHS PRIOR TO ACTUALLY MAILING OF THE CHECKS THROUGHT (sic) FEDERAL EXPRESS DELIVERED (sic) SERVICE" (Ground Five);

(6)     Defendant's Plea Agreement and Plea Supplement created "A PRIVATE RIGHT AND PRIVATE REMEDY" (Ground Six);

(7)     Defendant's Plea Agreement and Plea Supplement were invalid because Defendant's alleged fraudulent acts were insufficient to invoke the jurisdiction of this Court "FOR MAIL FRAUD OFFENSE UNDER 18 U.S.C. § 1341" (Ground Seven); and

(8)     the Government breached the Plea Agreement and Plea Supplement by seeking a sentence greater than the lower 50% of the applicable guideline range of 30-37 months (Ground Eight).

Mem [78] at 2-24.

On December 11, 2014, the Government filed its Response [82] asserting that Defendant's Motion should be denied because Defendant did not obtain prior approval from the Fifth Circuit before filing his Motion, and Defendant specifically waived his right to seek post-conviction relief as part of his Plea Agreement. Response [82] at 1-4.

On June 5, 2015, Defendant filed a Motion to Withdraw [83] his § 2255 Motion stating that he "affirmed and accepted" the Government's assessment that he should seek prior authorization to file a § 2255 Motion and "agreed that §2255 Motion must be withdrawn without prejudice." Motion to Withdraw [83] at 1. The Court's Order Granting Motion to Withdraw [84] was entered on June 8, 2015, and, in that Order, the Court also held that Defendant's § 2255 Motion was denied. Order [84] at 1.

On June 30, 2015, Defendant filed two Motions [86] [87].  Defendant's Motion for Reconsideration [86] seeks reconsideration of the Court's denial of his § 2255 Motion so that he could seek "authorization" of a "district or circuit judge" to file his § 2255 Motion.  Mot. for Recons. [86] at 1.  Defendant's Motion to Reinstated (sic) Rights to Seek Collateral Relief Pursuant to Title 28, United States Code, Section 2255 Otherwise Waived as Part of Plea Agreement [87] asks that Defendant's right to file a §2255 Motion be reinstated because his guilty plea was neither knowing nor voluntary, and asks that the Court conduct an "evidentiary hearing" so that he can adequately "introduce evidence" into the record.   Mot. to Reinstated (sic) Rights [87] at 1-4.

The Government filed its Response [88] to Defendant's Motions [86][87] on July 13, 2015.  The Government maintains that these Motions, just as the initial § 2255 Motion [77], should be denied because Defendant did not obtain prior approval from the Fifth Circuit and because Defendant had specifically waived his right to seek post-conviction relief as part of his Plea Agreement.  Resp. in Opp'n [88] at 1-5.

On July 31, 2015, Defendant filed a "Reply"[2] [90] alleging that this Court previously "authorized the filing of 2255 and even directed the Clerk's Office to send the necessary habeas corpus application in order to file 2255."  Reply [90] at 1.  The

---

[2]  The document filed by Defendant bears the subject line "OBJECTIONS TO UNITED STATES RESPONSE."  For simplicity, the Court refers to the document as a Reply.

Reply reasserts a variety of arguments to support Defendant's claim that his conviction violated his constitutional rights and that he was convicted based upon an "improper application of the law and facts," referencing generally ineffective assistance of counsel, prosecutorial misconduct, his lack of understanding of burdens of proof, fraud in the plea bargaining process, and his right to a jury trial, to confront witnesses, and to invoke the hearsay rule.  Reply [90] at 1-4.

## II.   DISCUSSION

A.   Legal Standard

Once finally convicted, there are four narrow and separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).  "[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'"  *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)).  Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32.  Relief under § 2255 is therefore reserved for violations

of constitutional rights and for a narrow range of injuries which could not have been raised on direct appeal and which, if condoned, would result in a complete miscarriage of justice.  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

"The validity of a guilty plea is a question of law . . . ."  *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)).  "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"  *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted).  Therefore, "[a] guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently."  *Hernandez*, 234 F.3d at 255 (quoting *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000)).

Whether a guilty plea was "knowing" turns on whether a defendant understands the direct consequences of a plea, including the maximum possible penalty, while "voluntariness" of a plea depends on whether the plea was induced by threats, misrepresentation, unfulfilled promises, or improper promises.  *Id.* at 255, n.3.  "[A] plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentation, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business."  *Bousley*, 523 U.S. at 619 (quotation omitted).  "To constitute an intelligent act, it must be done with sufficient awareness of the relevant circumstances and likely consequences."  *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (quotation omitted).  The

United States Supreme Court has "long held that a plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quotation omitted).

Defendant entered a plea of guilty to Count One of the Two-Count Indictment on November 4, 2011, and was sentenced on June 5, 2012. The Supreme Court denied certiorari on October 15, 2013. After conviction and exhaustion of his right to appeal, it is presumed that Defendant now stands fairly and finally convicted. *Samuels*, 59 F.3d at 528 (internal citation omitted).

B.   <u>Defendant's Motion for Reconsideration [86] and Motion to Reinstated (sic) Rights [87] are barred by the one year limitation period.</u>

Defendant's initial § 2255 Motion [77] was denied by the Court on June 8, 2015, at Defendant's request. Mot. to Withdraw [83] at 1; Order [84] at 1. Prior to addressing the merits of Defendant's Motion for Reconsideration [86] or Motion to Reinstated (sic) Rights [87], the Court must determine whether these Motions [86] [87] are barred by the one year limitation period contained in 28 U.S.C. § 2255.

A prisoner incarcerated by order of a federal court has one year to attack the constitutionality of the sentence. Title 28, United States Code, Section 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
>
>     (1) the date on which the judgment of conviction becomes final;

>(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

>(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Defendant has not raised any viable issues under Subsection (f)(2)–(4), thus the Court reviews the pleadings to determine whether Defendant's Motions [86] [87] were filed within the one year limitation period as set forth in § 2255(f)(1).

The Court sentenced Defendant on June 5, 2012.  Competency and Sentencing Tr. [41] at 62-65.  The Judgment and Commitment Order was entered on June 11, 2012.  J. [34] at 1-6.  On June 19, 2012, Defendant filed his Notice of Appeal [35].  The Fifth Circuit dismissed the appeal by Judgment/Mandate [48] issued on March 29, 2013, and the United States Supreme Court denied certiorari on October 15, 2013.  Notice [70].  As set forth in Supreme Court Rule 16.3

>[w]henever the Court denies a petition for a writ of certiorari, the Clerk will prepare, sign, and enter an order to that effect and will notify forthwith counsel of record and the court whose judgment was sought to be reviewed. The order of denial will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice.

Thus, Defendant was finally convicted on October 15, 2013, upon the Supreme Court's denial of certiorari.[3] *Giesberg v. Cockrell*, 288 F.3d 268, 271 (5th Cir. 2002). Consequently, Defendant had until October 15, 2014, to file a § 2255 Motion. Based upon the § 2255 Motion's certification executed by Defendant on October 10, 2014, Defendant timely filed his initial § 2255 Motion. Mot. [77] at 8.

On June 5, 2015, Defendant filed a Motion to Withdraw [83] his § 2255 Motion, which this Court granted by Order [84] entered June 8, 2015. Presuming that Defendant's one year statute for requesting relief pursuant to 28 U.S.C. § 2255 was tolled during the pendency of his § 2255 Motion, once the Court's Order [84] denying the § 2255 Motion was entered, Defendant had only 5 days remaining, or until June 13, 2015, to assert or reassert a § 2255 Motion.

Defendant's Motion for Reconsideration [86] and Motion to Reinstated (sic) Rights [87] were signed by Defendant June 16, 2015. Mot. for Recons. [86] at 5-6; Mot. to Reinstated (sic) Rights  [87] at 4-5. These Motions [86] [87] and any subsequent § 2255 Motion are therefore time barred and will be denied.

---

[3]   Although Defendant filed a petition for rehearing before the Supreme Court after certiorari was denied, that petition did not further toll the one year limitation period because "Rule 16.3 makes clear that an order denying a petition for writ of certiorari is effective immediately upon issuance, absent extraordinary intervention by the Supreme Court or a Justice of the Supreme Court." *Giesberg*, 288 F.3d at 271 (internal quotation omitted). Defendant's conviction was final on October 15, 2013, the date the Supreme Court denied certiorari.

C.   <u>Defendant's waiver of the right to assert claims under 28 U.S.C. § 2255 was entered into knowingly and voluntarily and is enforceable.</u>

Even assuming Defendant's present Motions [86] [87] or a renewed § 2255 Motion would somehow be timely, based upon a review of the record, the pleadings, and relevant legal authority, the Court finds that Defendant's assertion in his initial § 2255 Motion, that the waivers contained in his Plea Agreement should be stricken because they were not knowing and voluntary, is not well taken and should be denied.  Mem. [78] at 2-3; Mot. to Reinstated (sic) Rights  [87] at 1-4.

The Court finds Defendant's argument to be disingenuous at best.  At the plea hearing, the Court thoroughly explored with Defendant the meaning of the exact waivers he now contests.  Without hesitation or request to confer with counsel, Plea Tr. [40] at 16-21, Defendant responded under oath, "Yes, Sir," when questioned by the Court as to whether he understood these waivers, whether he had discussed them with his attorney, and whether his attorney had answered any questions he had about them.  *Id.*  "Solemn declarations in open court carry a strong presumption of verity."  *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).  The Court finds that Defendant knowingly and voluntarily agreed to the waivers contained in his Plea Agreement based upon his own sworn testimony at the plea hearing.  Defendant waived the right to seek relief under § 2255.

D.   **Even if the Court considers the merits of Defendant's initial § 2255 Motion [77] or his successive § 2255 Motion styled Motion for Reinstated (sic) Rights [87], Defendant has failed to state sufficient grounds which would entitle him to relief.**

Even if the Court were to reinstate Defendant's initial § 2255 Motion [77] and consider the merits of either that Motion or the successive § 2255 Motion to Reinstated (sic) Rights [87], Defendant has failed to state sufficient grounds entitling him to any relief.

The § 2255 Motions [77] [78] appear to advance the only four cognizable grounds for relief pursuant to § 2255: (1) that Defendant's constitutional rights were violated because he is not guilty of mail fraud under 18 U.S.C. § 1341 (Grounds One and Seven in Defendant's Memorandum [78]); (2) that the sentence is subject to collateral attack because the Government, as well as the Court, breached the Plea Agreement and Plea Supplement (Grounds Two, Four, Five, and Eight in Defendant's Memorandum [78]); (3) that the Plea Agreement created a private right and a private remedy (Ground Six in Defendant's Memorandum [78]); and (4) that Defendant's constitutional rights were violated due to ineffective assistance of counsel (Ground Three in Defendant's Memorandum [78]).

1.   **Defendant admitted to committing mail fraud and entered a plea of guilty to mail fraud under 18 U.S.C. § 1341 after having been thoroughly and properly informed of the elements of the crime by the Court (Grounds One and Seven in Defendant's Memorandum).**

Defendant asserts that, even though his actions were "reprehensible fraudulent acts," they "did not constitute a crime for purposes of § 1341." Mem. [78]

15

at 2 (Ground One).  Defendant argues that his guilty plea is invalid and must be set aside because the Indictment failed to inform him that the crime included "mail matter requirement."  *Id*. at 5.

18 U.S.C. § 1341 provides that

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

In reviewing Defendant's assertion that his actions did not constitute federal mail fraud, the Court notes that

> [t]he mail fraud statute prohibits the use of the mail for any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  To sufficiently charge the offense of mail fraud, the indictment must allege that (1) the defendant devised or intended to devise a scheme to defraud, (2) the mails were used for the purpose of executing, or attempting to

16

execute, the scheme, and (3) the falsehoods employed in the scheme were material.

*United States v. McMillan*, 600 F.3d 434, 447 (5th Cir. 2010) (quotations omitted).

> Count One of the Indictment [2] charged as follows:
>
> From or about August 23, 2010 through on or about January 6, 2011, in Jackson County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant, BOBBY EARL KEYS, aided and abetted by others known or unknown to the Grand Jury, intentionally *[1] devised and intended to devise a scheme and artifice to defraud* and to obtain money and property *[3] by means of materially false and fraudulent pretenses, representations, and promises,* and in furtherance thereof, did use and cause to be *[2] used the U.S. Mails and private or commercial interstate carriers for the purpose of executing the scheme and attempting to do so.*

Indictment [2] at 2-3 (emphasis added). The Court informed Defendant at the plea hearing of the elements of the crime of mail fraud, which Defendant acknowledged under oath he understood.

> THE COURT: I'm also required to inform you of the essential elements of the charge contained in Count One, Mr. Keys. These are the things the Government would have to prove, and they would have to prove each of them beyond a reasonable doubt if this case went to trial.
>
> Count One charges you with violating Title 18, United States Code, Section 1341, which makes it a crime for anyone to use the mails in carrying out a scheme to defraud. In order for you to be found guilty of this crime, the Government must prove each of the following beyond a reasonable doubt: First, that the defendant, that's you, knowingly created a scheme to defraud as described in the indictment; second, that the defendant acted with a specific intent to defraud; third, that the defendant caused another person to mail something through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme; and fourth, that the scheme to defraud employed false material representations.

Now, a scheme to defraud includes any scheme to deprive another of money, property, or of the intangible right to honest services by means of false or fraudulent pretenses, representations, or promises. An intent to defraud means an intent to deceive or cheat someone. A representation is false if it is known to be untrue or is made with reckless indifference as to its truth or falsity. The representation would also be false when it constitutes a half-truth or effectively omits or conceals a material fact, provided it is made with intent to defraud.

The false statement is material if it has a natural tendency influence or is capable of influencing the decision of the person or entity to which it is addressed.

It is not necessary that the Government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme, or that the mailed material was itself false or fraudulent, or that the alleged scheme actually succeeded in defrauding anyone, or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.

What must be proved beyond a reasonable doubt is that the defendant knowingly devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment and that the use of the mails was closely related to the scheme, in that the defendant either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme. To cause the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even though the defendant did not intend or request the mails to be used. Each separate use of the mails in furtherance of a scheme to defraud constitutes a separate offense.

Now, those are the essential elements of the charge contained in Count One. Do you understand those, Mr. Keys?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed them with your attorney and asked him any and all questions you may have had about them?

THE DEFENDANT: Yes, sir.

>THE COURT:  Did you understand his explanation?
>
>THE DEFENDANT:  Yes, sir.
>
>THE COURT:  Do you fully and completely understand the nature of the charge in Count One, including its essential elements?
>
>THE DEFENDANT:  Yes, sir, Your Honor.

Plea Tr. [40] at 23-25.  Then in response to the Court's inquiry as to whether the Defendant's plea was guilty or not guilty to Count One of the Indictment, Defendant responded, "Guilty, Your Honor."  *Id.* at 30.  The Pre-Sentence Report set forth sufficient facts to show that Defendant's actions constituted mail fraud, and Defendant clearly admitted under oath  that he committed mail fraud prior to entering his guilty plea.

Alternatively, Defendant argues that he cannot be guilty of mail fraud because he had been contacted by a BP representative on September 12, 2010, who told him that BP had detected fraud and that he would receive no further checks, therefore nothing that occurred after that date could be held to have been in furtherance of a scheme to defraud.  Mem. [78] at 20-22 (Ground Seven).

The Court finds that Defendant's self-serving unsubstantiated allegation that a BP Representative notified him on September 12, 2010, that fraud had been detected, an issue he failed to raise at his plea hearing, in his objections to the Pre-Sentence Report [32-2], or at his sentencing hearing, but now advances for the first time in his § 2255 Motion, is not credible and is directly contradicted by the information contained in the Pre-Sentence Report.

19

As set forth in the Indictment, from "on or about August 23, 2010, through on or about January 6, 2011," Defendant submitted fraudulent information to the Gulf Coast Claims Facility ("GCCF") in furtherance of his mail fraud scheme. Indictment [2] at 1-4; Pre-Sentence Report *SEALED* [32] at 6-12. The Pre-Sentence Report further reflects that the investigation into Defendant's mail fraud scheme did not begin until April 11, 2011, when the United States Secret Service was provided information by the GCCF concerning "the identification of several BP Oil Spill claims believed to have been filed fraudulently." Pre-Sentence Report *SEALED* [32] at 6.

Defendant admits in his Memorandum in Support of his § 2255 Motion that the two checks identified in the Indictment were mailed to him, one on November 4, 2010, and one on January 3, 2011. Mem. [78] at 20-22. Defendant, through his counsel, admitted at the plea hearing that "Mr. Keys substantially agrees with what the Government said and admits that he submitted a false application for BP disaster assistance to Ohio."[4] Plea Tr. [40] at 28-29. Defendant also replied "Yes" when the Court asked if he agreed that "he had filed a false application and that he did not have an employment claim." *Id.*

---

[4] An example of Defendant's use of the mail in furtherance of his fraudulent scheme is reflected in the Pre-Sentence Report which states that on December 23, 2010, GCCF received a request for a final payment of $5,000.00 from Defendant signed on December 22, 2010, in a pre-paid "Express Mail envelope." Pre-Sentencing Report *SEALED* [32] at 9, ¶33.

The Court finds that Defendant admitted under oath that he was guilty of mail fraud.  The Pre-Sentence Report documents Defendant's active participation in the ongoing scheme to defraud the GCCF through the time he received the two checks reflected in the Indictment.  Defendant's request that the Court find that the two checks were not part of Defendant's mail fraud scheme should be denied.

2.    <u>Defendant's argument that his sentence is subject to collateral attack because the Government, as well as the Court, breached the Plea Agreement is not well taken (Grounds Two, Four, Five and Eight of Defendant's Memorandum).</u>

Defendant appears to argue that his guilty plea should be "rendered invalid" based upon the Government's alleged breach of the Plea Agreement by:  (1) failing to provide exculpatory evidence (Ground Two) Mem. [78] at 6-7; and (2) failing to uphold its agreement to dismiss Count Two of the Indictment and recommend that Defendant be sentenced to the lower 50% of the 30-37 months of the applicable guideline range based upon the Court's refusal to "sanction" the Plea Agreement (Ground Four), Mem. [78] at 12-14; (3) extending the "intended loss calculation" to include loss that occurred after GCCF detected the fraudulent scheme on September 12, 2010, resulting in an incorrect Guideline range (Ground Five), Mem. [78] at 15; and (4) withdrawing its recommendation for a two level reduction for acceptance of responsibility, supporting the increased intended loss calculation, and failing to recommend that Defendant be sentenced to the "lower 50% range" of the applicable 30-37 month guideline range. (Ground Eight), Mem. [78] at 23-24.

21

Since a plea agreement is contractual in nature, the Court must construe it accordingly and determine whether a breach occurred.  *See United States v. Ballis*, 28 F.3d 1399, 1409-10. (5th Cir. 1994).  The Plea Agreement provides, in relevant part, that the penalty for the offense charged in Count One of the Indictment, "charging a violation of Title 18, United Sates Code, Section 1341, is not more than 20 years,"  that the Court can make a determination of the amount of loss taking into consideration "relevant conduct, which amount is not limited to the count of conviction," and that the Court "may impose a sentence other than that indicated by the Guidelines if the Court finds that another sentence would be more appropriate." Plea Agreement [23] at 1- 6.  Although the Plea Supplement [24] does state that the Government will recommend that the "Court impose a sentence within the lower 50% of the applicable range" under the Sentencing Guidelines, neither the Plea Agreement [23] nor the Plea Supplement [24] predict or promise what that range may be.

At the Plea Hearing the Court asked Defendant if he understood that the Plea Agreement was merely a recommendation that the Court could reject, to which the Defendant responded, "Yes, sir, Your Honor."  Plea Tr. [40] at 11.  The Court further asked Defendant if he understood that he could be sent to prison for a term "of not more than 20 years," to which Defendant replied, "Yes, sir."  *Id.* at 12.  Prior to Defendant entering his plea of guilty, the Court did not state what the Guideline range would be, but advised Defendant that "a written pre-sentence report would

need to be prepared by the probation office to assist the Court in sentencing," and

that Defendant should cooperate and provide "complete and truthful answers." *Id.*

at 30.

Based upon the January 17, 2012, Pre-Sentence Investigation Report [32] as

revised May 25, 2012; the Addendum to the Pre-Sentence Report [32-1];

Defendant's May 18, 2012, Objection Letter [32-2]; the testimony at the sentencing

hearing by Defendant, Special Agent Allen Bryant of the United States Secret

Service, and United States Probation Officer Matthew Sones, and the record as a

whole, and in conjunction with the Court's rulings on Defendant's objections during

the sentencing, the Court adopted the "[Pre[-S]entence [I]nvestigation [R]eport and

[A]ddenda as the Court's findings of fact, along with the findings of fact made here

today" and found that

> . . . the guideline computations will be as follows:  The total offense level
> would be a 27, a criminal history category would be a five, the guideline
> range for imprisonment would be 120 to 150 months.  The defendant is
> not eligible for probation.  The supervised release range is one to three
> years.  The fine range is $12,500 to $125,000, with a statutory maximum
> of $250,000.  Restitution of $98,098.66 is owed, along with a $100 special
> assessment.

Competency and Sentencing Tr. [41] at 56.  Defendant's counsel agreed that the

Guideline computations announced by the Court were correct based upon the

findings of the Court and its rulings on any objections.  *Id.*

The Government then requested that, "pursuant to the [P]lea [A]greement,"

Defendant be sentenced "within the lower 50 percent of the guideline range as

computed by the Court." *Id*. at 59.  After stating its reasons on the record, the Court declined the Government's recommendation and held that, taking into account all of the aggravating and mitigating circumstances involved in the case, a sentence at the top of the Guideline range was appropriate "in light of the defendant's egregious and lengthy criminal history." *Id*. at 59-65.  The Court then sentenced Defendant "to the custody of the Bureau of Prisons for a term of 150 months as to [C]ount [O]ne of the [I]ndictment." *Id*.  The Court reiterated

> that even assuming the guidelines were improperly calculated by the Court, based on the statutory sentencing factors discussed earlier, the Court would nevertheless impose a sentence of 150 months as a non-guideline sentence or upward variance.

*Id*. at 63.  Defendant was also ordered to pay restitution in the amount of $98,098.66, to pay a special assessment of $100.00, and, upon release from imprisonment, to be placed on supervised release for a term of three years.  *Id*.

The record easily supports the conclusion that the Government did not breach the Plea Agreement in that it did in fact recommend that Defendant be sentenced to the lower 50% of the applicable Guideline range once that proper Guideline range was determined by the Court, nor did any of the other breaches alleged by Defendant occur based upon the record.

24

3.  <u>Defendant's assertions that this Court lacks jurisdiction and that the Plea Agreement created "PRIVATE RIGHT AND PRIVATE REMEDY PURSUANT TO SECTION 102 OF THE CIVIL RIGHTS ACT OF 1991, PUB. L. NO. 102-166, 105 STAT. 1071" are patently frivolous (Ground Six of the in Defendant's Memorandum).</u>

Defendant appears to assert in his Memorandum at Ground Six that this Court lacks jurisdiction over "the person or the subject matter because the Government lack (sic) a cause of action," Mem. [78] at 16-19, and that only the Sate of Mississippi had jurisdiction over his simple "fraud," Mot. to Reinstated (sic) Rights [87] at 1-2. Defendant seems to claim in the alternative that he is entitled to have his conviction set aside because once the Court accepted the Plea Agreement he entered into with the Government, the Plea Agreement became a "contract" which created a "PRIVATE RIGHT AND PRIVATE REMEDY PURSUANT TO SECTION 102 OF THE CIVIL RIGHTS ACT OF 1991, PUB. L. NO. 102-166, 105 STAT. 1071." Mem. [78] at 16-19.

As the Court has already explained, Defendant's fraudulent actions occurred in Jackson County, Mississippi, and did constitute federal mail fraud under 18 U.S.C. § 1341, therefore this Court had jurisdiction over both the subject matter and the Defendant. Defendant's contention that only the State of Mississippi had jurisdiction over his "fraud" is unavailing and frivolous.

Defendant's citation to Section 102 of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, to support his contention that the Plea Agreement created a private right and a private remedy is easily discredited because it is

25

inapplicable to the issue before the Court.

> Title VII of the Civil Rights Act of 1964 was amended by the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071. Until November 1991, only equitable remedies were available to victims of discrimination under Title VII. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 252, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994).  Section 102 of the 1991 Act, however, now makes it possible for a successful plaintiff "to recover compensatory and punitive damages for certain violations of Title VII."  Id. at 247; see also 42 U.S.C. § 1981a(a) (1994).  "Section 102 confers a new right to monetary relief on persons . . . who were victims of a hostile work environment but were not constructively discharged, and the novel prospect of damages liability for their employers." *Landgraf*, 511 U.S. at 283.

*Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1218 (5th Cir. 1997).  This authority relied upon by Defendant bears no relationship to his request for § 2255 relief.  Defendant's request that this Court find that it lacks jurisdiction should be denied.

4.   <u>Defendant has not carried his burden to establish a claim for ineffective assistance of counsel (Ground Three in Defendant's Memorandum).</u>

Defendant maintains that his constitutional rights were violated and he should be allowed to withdraw his guilty plea due to ineffective assistance of counsel.  Defendant avers that his counsel failed to use "due diligence by seeking [exculpatory] material or conduct a meaningful investigation into the facts of the case," failed to advise him that he was not guilty of federal mail fraud, and failed to have the Indictment dismissed for lack of jurisdiction.  Mem. [78] at 8-11.

The Sixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel in defense of a criminal prosecution.

U.S. Const. amend. VI.  This right extends to the sentencing process.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012) (citations omitted).  To succeed on a § 2255 motion asserting ineffective assistance of counsel, a defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984).  Failure to establish either prong defeats the claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).  "[M]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Id.* at 1042-43.

To demonstrate ineffective assistance of counsel, Defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial.  *Strickland*, 466 U.S. at 687-88.  A court must presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" and a defendant must overcome that presumption. *Strickland*, 466 U.S. at 689.  To demonstrate "prejudice" in the *Strickland* sense, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Because the Court has found that Defendant's actions did constitute the crime of federal mail fraud and that his other contentions regarding the validity of his guilty plea, the sufficiency of the evidence of his guilt, and the Court's

27

jurisdiction over his case, all lack merit, Defendant cannot establish prejudice in the *Strickland* sense.  Nor has Defendant shown that his counsel was  ineffective in advising him to negotiate a plea.  Defendant's unsubstantiated conclusory allegations that there existed "exculpatory" information likewise do not support his claim for ineffective assistance of counsel.

### III.   EVIDENTIARY HEARING

Defendant requested an evidentiary hearing.  *See* Motion to Reinstated(sic) Rights [87] at3-4.  The Court finds that a hearing is not required.  A defendant is only entitled to an evidentiary hearing on his § 2255 motion if he has presented "independent indicia of the likely merit of [his] allegations."  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted).  Because Defendant has not done so in the Court's view, his request for an evidentiary hearing will be denied.

### IV.   CONCLUSION

For the foregoing reasons, Defendant Bobby Earl Keys' Motion for Reconsideration [86] and Motion to Reinstated (sic) Rights to Seek Collateral Relief [87] will be denied.  The Court further finds that because an evidentiary hearing is neither appropriate nor necessary to resolve Defendant's § 2255 claims, Defendant's request for a hearing likewise will be denied.  Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that Defendant

Bobby Earl Keys' Motion for Reconsideration [86] and Motion to Reinstated (sic)

Rights to Seek Collateral Relief [87] are **DENIED** without an evidentiary hearing.

**SO ORDERED AND ADJUDGED**, this the 31st day of October, 2016.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE